**The Knight Law Group**
Noel Knight (SBN 223821)
800 J St., Ste. #441,
Sacramento, CA 95814
Telephone: (510) 435 9210
Fax: (510) 281 6889
lawknight@theknightlawgroup.com

Proposed Attorneys for Debtor…COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In Re:<br><br>COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC | CASE NO. 2022-10778<br><br>DEBTOR'S AMENDED MOTION TO APPROVE DEBTOR-IN-POSSESSION FUNDING<br><br>DCN: NCK - 8<br><br>Dept.: A, Crtroom #11, 2500 Tulare St., Fresno<br><br>Hon. Jennifer E. Niemann<br><br>cc: United States Trustee<br><br>September 14, 2022 @ 9:30 a.m. |

### DEBTOR'S AMENDED MOTION TO APPROVE D.I.P FINANCING

Compass Pointe Off Compass Partnership B, LLC, the Debtor and Debtor-In-Possession in the above-captioned matter (hereinafter "DEBTOR" or "COMPASS") hereby applies for Court Approval of Debtor in Possession funding, pursuant to §364 (b) of the Bankruptcy Code;

1. Debtor commenced a voluntary case under Chapter 11 of the United States Bankruptcy Code on or about May 8, 2022.

2. Debtor expects to continue in possession of its property located at 3700 Horizons Avenue #16, Merced, California and to remain in control of affairs as a

Chapter 11 Debtor-In-Possession and carry through its building plans;

AND TO WIT…

### DEBTOR'S MOTION FOR ENTRY OF
### ORDER AUTHORIZING DEBTOR-IN-POSSESSION FINANCING

The above-captioned debtor in possession (the "Debtor" and/or "Compass") hereby moves this Court for entry of an Order, substantially in the form attached hereto as Exhibit 3 (the "Final DIP Order"), authorizing the Debtor to obtain post-petition financing as set forth in the Final DIP Order and DIP Credit Agreement (as defined below).[1] In support of its Motion, the Debtor respectfully states as follows:

### INTRODUCTION & HISTORICAL BACKGROUND

1. Compass took out a hard capital loan from its primary creditor, Dakota Note, LLC, ("Dakota") with which to position itself to move from grading to groundbreak for principal construction.

2. As it often does, time slipped by quicker than the Debtor's intent and after several paid forbearances with Dakota, Compass found itself in a situation with an impeding foreclosure.

3. And so, the Debtor commenced a voluntary case under Chapter 11 of the United States Bankruptcy Code on or about May 8, 2022.

4. Debtor expects to continue in possession of its property located at 3700 Horizons Avenue #16, Merced, California and to remain in control of its affairs as a Chapter 11 Debtor-In-Possession and to proceed with its building plans.

5. To achieve its objective to commence construction and also to pay off its Dakota Note, Debtor has received an offer of $34,400,000 in financing as per the terms set forth herein.

---

[1] Capitalized terms used but not defined herein have the meanings given to them in the Interim DIP Order.

AMENDED MOTION TO APPROVE DEBTOR IN POSSESSION FUNDING
Page 2 of 6

## RELIEF REQUESTED

6. By this Motion, the Debtor seeks entry of the Final DIP Order, authorizing (*inter alia*) its entry of the Debtor-in-Possession Term Loan Credit Agreement (the "DIP Credit Agreement") attached thereto.

7. Under the Final DIP Order, the Debtor would be authorized to draw up to the full $34,400,000 DIP Commitment, subject to the terms of the DIP Credit Agreement.

## GROUNDS FOR RELIEF

8. The relief hereby sought is supported by section 364 of title 11 of the United States Code Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

9 Under Bankruptcy Code section 364 and Bankruptcy Rule 4001, the DIP Loans may be approved upon a showing that <u>the following factors are present</u>:

  A. The proposed financing is an exercise of the debtor's sound and reasonable business judgment;

  B. The financing agreement was negotiated in good faith and at arm's length and no alternative financing is available on equal or better terms;

  C. The financing is necessary, essential, and appropriate for the continued operation of the debtor's business and/or the preservation of its estate and is in the best interests of the estate and its creditors.

**See**: e.g., <u>In re Farmland Indus., Inc.</u>, 294 B.R. 855, 879-81 (Bankr. W.D. Mo. 2003).

**In the matter at hand**:

10. First, entry into the DIP Loans is an exercise of the Debtor's sound and reasonable business judgment. Courts presume that debtors make financing decisions "on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company," In re Los Angeles Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011), and will not "second-guess a business decision, so long as management exercised a minimum level of care in arriving of the decision," *id.*, 457 B.R. at 313.

    **In the matter at hand**, Debtor is fully aware of the full scope, nature, and requirements of the financing as offered and intends to use the same to move forward with all its business and construction plans; this intent being in the best interests of its estate.

11. Second, the DIP Credit Agreement was negotiated in good faith and at arm's length and no alternative financing is available on equal or better terms. In demonstrating the presence of this factor, a debtor need only demonstrate that it made a "reasonable effort" to obtain alternative financing. In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990); See also In re Reading Tube Indus., 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987) in that…"Given the 'time is of the essence' nature of this type of financing, we would not require this or any debtor to contact a seemingly infinite number of possible lenders."

    **In the matter at hand**, Debtor, via its representative David C. Sowels, along with Noel Knight, negotiated with the financing lender in good faith and at arms length. As per the Declarations of David C. Sowels and Noel Knight, respectively, albeit both Mr. Sowels and Mr. Knight had been diligently working towards locating financing since the filing of bankruptcy 22-10778, the Financing Offer as presented is the only offer available to the Debtor, yet nevertheless allows the Debtor to achieve its goals and objectives.

AMENDED MOTION TO APPROVE DEBTOR IN POSSESSION FUNDING
Page 4 of 6

12. Third, the terms of the DIP Loans are necessary, essential, and appropriate for the continued operation of the Debtor's business and/or the preservation of its estate and are in the best interests of the estate and its creditors. This factor is satisfied where, for example, "[w]ithout the continued financings, the Debtors would likely be forced into a Chapter 7 or 11 liquidation, to the detriment of all creditors," Farmland Indus., 294 B.R. at 885, and the proposed financing "was not principally for the benefit of a pre-petition creditor to the detriment of other parties in interest," Ames Dep't Stores, 115 B.R. at 40.

**In the matter at hand**, there's nothing truer said than that the DIP financing up for this Court's review is essential and appropriate for the continued operation of the Debtor's business and the preservation of its estate. As per the considerations of Farmland Indus., id at 855, Compass is already in a Chapter 11 and barring this financing, will have to head into liquidation; and while the financing as offered will allow the Debtor to satisfy its primary secure creditor, the vast majority of the funds will be going to its operation to construct student housing; See - Ames Dep't Stores, 115 B.R. at 40.

WHEREFORE, given the foregoing, the Debtor submits that grounds exist to grant the relief hereby requested under Bankruptcy Rules 4001, 6003, and 6004.

Executed at Sacramento, California on August 2, 2022.

The Knight Law Group,

_____
Noel Knight, Esq.
The Knight Law Group

Attorneys for Debtor

---

AMENDED MOTION TO APPROVE DEBTOR IN POSSESSION FUNDING
Page 5 of 6

Approved by:

s/s David C. Sowels

By_____
Manager David Sowels on behalf of the Debtor

DATED: August 2, 2022

**EXHIBITS AS ATTACHED**

1. DIP TERM SHEET – SIGNED BY ALL PARTIES

**EXHIBIT AS SEPARATE**

1. CREDIT AGREEMENT

###

July 14, 2022

Summary of Key Terms of and Conditions for
**DEBTOR-IN-POSSESSION TERM LOAN FACILITY**

Compass Pointe Off Campus Partnership B, LLC
c/o: Noel Knight
The Knight Law Group
lawknight@theknightlawgroup.com

**CC: Monica Kirkpatrick**

The following summarizes the key terms (the "**Term Sheet**") on which certain investment fund(s) for which Legalist DIP GP, LLC serves as general partner (the "**DIP Lender**") are willing to extend postpetition financing (the "**DIP Loans**") to Compass Pointe Off Campus Partnership B, LLC (the "**Debtor**") in connection with its chapter 11 case pending in the United States Bankruptcy Court for the Eastern District of California (the "**Bankruptcy Court**"), in an aggregate amount of $34,400,000 (the "**DIP Commitment**").

Prior to satisfaction of the Conditions Precedent to funding, this Term Sheet shall be *confidential, non-binding, for discussion purposes only, and not a commitment to lend*.

| | |
|---|---|
| Overview | The DIP Loans shall be made available to the Debtor in the aggregate amount of the DIP Commitment for the following uses:<br>1. Legal fees of The Knight Law Group: including $7,500 to cover the negotiation and filing of this DIP deal;<br>2. Refinance/pay down prepetition lender(s), as applicable;<br>3. Operating expenses of the Debtor and Development Cost; and<br>4. Other agreed-on uses. |
| Conditions Precedent to DIP Draw | The DIP Lender will make available DIP Loans in multiple draws, provided no event of default shall (x) have occurred and be continuing or (y) be reasonably likely to result therefrom, upon (such date, the "**Effective Date**"):<br>1. The DIP Lender's completion, to its own satisfaction, of any remaining due diligence;<br>2. The Debtor's delivery of a fully executed credit agreement in Approved Form;[1] and<br>3. The Bankruptcy Court's entry of a final financing order approving the DIP Loans and otherwise in Approved Form (the "**DIP Order**"), which remains in full force and effect.<br><br>The Debtor shall file a motion for expedited approval of the DIP Loans no later than three weeks from the execution of this Term Sheet, or an additional one-time "**Reserved Funds Fee**" of 1.00% of the DIP Commitment shall be earned. |
| Interest; Default Interest; Undrawn Line Fee | The outstanding principal amount of the DIP Loans (together with all other due and payable DIP Obligations (defined below)) shall accrue paid-in-kind interest from the Effective Date at the U.S. prime rate (subject to a 4.75% floor) plus 11.00% per year. Terms of Credit Agreement must match this Term Sheet. While an event of default has occurred and is continuing, such amounts shall accrue an additional 4.75% in interest per year. If the DIP Loans are not borrowed in full in a single draw, any undrawn portion of the DIP Commitment shall accrue an "**Undrawn Line Fee**" from the Effective Date at 4.75% per year. All such interest and fees shall accrue and be compounded and capitalized monthly and be due and payable in cash upon the Maturity Date. |
| Other Costs of Borrowing | A onetime "**Commitment Fee**" of 2.0% of the DIP Commitment and "**Underwriting Fee**" of 1.0% of the DIP Commitment shall be fully and irrevocably earned upon the Effective Date. In addition, a "**Monitoring Fee**" of 1.5% of the DIP Commitment per year shall accrue and be compounded and capitalized monthly. All such fees shall be due and payable in cash upon the Maturity Date. |

---

[1] "**Approved Form**" means in form and substance acceptable to (as evidenced by the prior written consent of) the DIP Lender.

| Prepayments | The DIP Loans shall be mandatorily repaid from, and within 10 days of the Debtor's receipt of, proceeds from any sale or other disposition of DIP Collateral; provided that any such disposition shall occur in Approved Form. Any repayment required to be made within 13 months of the Effective Date shall be accompanied by a "**Makewhole Fee**" of 4.75% of the amount required to be repaid. The DIP Loans may be voluntarily repaid prior to the Maturity Date beginning 10 months after the Effective Date; provided that voluntary repayments made within 13 months of the Effective Date shall be subject to a Makewhole Fee. |
|---|---|
| Maturity Date | The DIP Loans shall mature, and all unpaid DIP Obligations shall be due and payable, upon the earliest (the "**Maturity Date**") of (i) 19 months after the Effective Date, (ii) the Debtor's exit from bankruptcy, and (iii) acceleration of the DIP Loans following an event of default. |
| Superpriority Claims; DIP Liens; DIP Collateral | Subject to a customary carveout for estate professional fees and other administrative expenses, all DIP Obligations shall constitute DIP Claims,[2] payable from the DIP Collateral and all other property of the Debtor's estate. The DIP Order shall grant the DIP Lender automatically perfected security interests (collectively, the "**DIP Liens**"), senior to all pre- and postpetition liens, on all present or future estate property (collectively, the "**DIP Collateral**"). |
| Break-Up Fee | In the event that, after execution hereof, the transaction described herein should not be timely effected for any reason, the DIP Lender shall immediately (and without any further action or notice) be entitled to a fee of 4.75% of the DIP Commitment (the "**Break-Up Fee**").[3] |
| DIP Lender Expenses; Other DIP Obligations | The Debtor shall pay, no later than the Maturity Date, all reasonable costs and expenses of the DIP Lender incurred in connection with the DIP Loans (collectively, the "**DIP Lender Expenses**"). The DIP Lender Expenses, together with all principal of, and interest and fees on, the DIP Loans, together with any other amount owed by the Debtor in connection therewith shall constitute "**DIP Obligations**" secured by the DIP Liens. |
| Miscellaneous Provisions | Customary and as reasonably required by the DIP Lender, including:<br>• Debtor's representations, warranties, and covenants (including budget and reporting);<br>• Stay waiver (notwithstanding Bankruptcy Rule 6004);<br>• Indemnity of DIP Lender and its affiliates;<br>• Section 364(e) "good faith" findings in favor of the DIP Lender;<br>• Carveout (2.50% of DIP Loans post-default);<br>• Events of default and DIP Lender's rights and remedies; and<br>• Governing Law (Bankruptcy Code / New York State). |

*Note that this Term Sheet relates solely to a proposed debtor-in-possession financing.*

*The DIP Lender does not offer exit financing or otherwise extend credit to entities outside chapter 11.*

---

[2] "**DIP Claims**" means "superpriority" administrative-expense claims with priority over (i) all other administrative-expense claims, expenses, and costs permitted by, described in, or entitled to priority under the Bankruptcy Code and (ii) all other unsecured claims against the Debtor.

[3] The Debtor acknowledges that the Break-Up Fee is intended to be an actual, necessary cost and/or expense of preserving its estate and, thus, entitled to priority under Bankruptcy Code section 503(b). The Break-Up Fee, together with all costs of collection, shall be due and payable (if applicable) from and after execution of this Term Sheet by the Debtor, irrespective of the occurrence of the Effective Date.

This Term Sheet shall expire and be without further effect if not signed by both parties by July 21, 2022.

Accepted and agreed to, as of the first date written above:

| DEBTOR: | DIP LENDER: |
|---|---|
| COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC | LEGALIST DIP GP, LLC, as General Partner |
| By: *David Sowells* (DocuSigned) | By: *[signature]* |
| Name: David Sowells | Name: Christian G.B. Haigh |
| Title: Manager | Title: Managing Member |