**The Knight Law Group**
Noel Knight SBN #223821
800 J Street, Suite 441
Sacramento, CA 95814
Telephone: (510) 435-9210
Facsimile: (510) 281-6889
www.noelknightlaw.com
lawknight@theknightlawgroup.com

Attorney for Debtor…
COMPASS POINTE OFF CAMPUS
PARTNERSHIP B, LLC

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 22-10778 |
| COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC | Chapter: 11 |
| Debtor and Debtor-in-Possession. | **ORDER CONFIRMING PLAN** |

### ORDER CONFIRMING CHAPTER 11 PLAN

An application has been made to confirm a Chapter 11 Plan pursuant to 11 U.S.C. §1129 et seq. and to wit…the Plan of Reorganization under Chapter 11 of the Bankruptcy Code filed by the above captioned Debtor (the "Plan"), having been transmitted to creditors and equity security holders; and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. §1129 (b) have been satisfied:

**IT IS ORDERED THAT**:

The Plan filed by the above captioned Debtor dated May17, 2023 is confirmed.

A copy of the confirmed Plan dated May 17, 2023 is attached hereto as Exhibit.

A copy of the confirmed Plan dated May 17, 2023 is also available for review on the Court's electronic docket at Docket Number 374.

BY THE COURT:

Dated: September 01 2023

Honorable Jennifer E. Niemann
United States Bankruptcy Judge

**The Knight Law Group**
Noel Knight SBN #223821
800 J Street, Suite 441
Sacramento, CA 95814
Telephone: (510) 435-9210
Facsimile: (510) 281-6889
www.noelknightlaw.com
lawknight@theknightlawgroup.com

Attorney for Debtor...
COMPASS POINTE OFF CAMPUS
PARTNERSHIP B, LLC

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 22-10778 |
| COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC | Chapter: 11 |
| Debtor and Debtor-in-Possession. | **ORDER CONFIRMING PLAN** |
| | **EXHIBIT** |

A copy of the confirmed Plan dated May 17, 2023 is attached hereto as Exhibit.

A copy of the confirmed Plan dated May 17, 2023 is also available for review on the Court's electronic docket at Docket Number 374.

## EXHIBIT

## CONFIRMED CHAPTER 11 PLAN

Noel Knight, SBN 223821
**THE KNIGHT LAW GROUP**
800 J Street, Suite 441
Sacramento, California 95814
Telephone: 510.435.9210
Facsimile: 510.281.6889
www.noelknightlaw.com
lawknight@theknightlawgroup.com

Attorneys for Debtor…Compass Pointe Off Campus Partnership B, LLC

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC,<br><br>Debtor and Debtor in Possession. | Case No. 2022-10778<br><br>Chapter 11<br><br>DCN: NCK - 15<br><br>**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION** DATED MAY 17, 2023<br><br>Dept. A, Courtroom 11, 5th Floor<br>2500 Tulare St., Fresno, California<br>Judge: Hon. Jennifer E. Niemann<br>Hearing Date: June 28, 2023 |

COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC (the "Debtor") is the proponent of this Second Amended Plan of Reorganization (the "Plan") filed in the above-captioned Chapter 11 case. ** The Initial Plan filed on August 3, 2022 was submitted to comply with the Deadline requirements of **11 U.SC §362 (d) (3)** and the first Amended Plan was withdrawn due to case particulars <u>and to wit</u>…

## NOTICE

<u>Debtor herein submits its Second Amended Plan for court consideration</u>…

1

# I.

# INTRODUCTION

Compass Point Off Campus Partnership B, LLC owns Fully-Entitled property ("Property") near U.C. Merced on which it is <u>currently building</u> off campus housing for the ever-growing UC student population in the greater Merced area; **HISTORY**…

1. Compass took out a hard capital from its primary creditor, Dakota Note, LLC, ("Dakota") with which to position itself to move from grading to groundbreak for principal construction.

2. As it often does, time slipped by quicker than the Debtor's intent and after several paid forbearances with Dakota, Compass found itself in a situation with an impending foreclosure.

3. And so, the Debtor commenced a voluntary case under Chapter 11 of the United States Bankruptcy Code on or about **May 8, 2022**; 2022-10778 E.D., Fresno.

4. Debtor remains in possession of its property located at 3700 Horizons Avenue, Merced, California ("Compass") and remains in control of its affairs as a Chapter 11 Debtor-In-Possession; in short, Debtor filed the Chapter 11 to provide it breathing space within which to promote the best interests of its estate.

5. <u>Best Interests</u>: On October 20, 2022, this Court approved an Order Debtor in Possession "DIP" financing by which Debtor has moved forward with its construction plans to build student housing serving UC Merced.

## A. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a **Chapter 7 liquidation**. A liquidation analysis has previously been submitted to this Court.

**B. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Plan Proponent provided projected Financial Information as to attached to

the Amended Motion to Confirm DIP Financing…See – **ECF#219** and **ECF#220**;

**NOTE**: Re: Credit Agreement for DIP Financing…regarding the milestones and budget, were included in the Final Credit Agreement…See - ECF#188 and **ECF#189**.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c) (2), pursuant to DIP finance as approved by this Court.

The Plan also assumes that the Debtor will not be required to shut down its business operations during any remaining tenure of the COVID-19 pandemic; or other disaster or Force Majeure. Nevertheless, Plan provides that, if the Debtor is ordered to close its business due to the COVID-19 pandemic or other disaster, payments to creditors under the Plan shall be suspended for the period of time any federal, state or local business closure order is in effect.

## ARTICLE 1
## SUMMARY

Creditor Dakota Note, LLC, *having been paid in full* on October 20, 2022 via DIP Financing, this Second Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to PAY IN FULL creditor Merced DIP Lender, LLC. ("Merced") as follows, if so approved by this Court after a 13 month period either by…

a. Sale of the property by the Debtor or;
b. FANNIE MAE refinance by the Debtor via Real Estate Finance Lender Walker & Dunlop;
c. Both methods (a) and (b) having been approved by creditor Merced DIP Lender, LLC.

**NOTE:** **On or about December 7, 2022, the initial potential purchaser of the Property dropped itself from the project. In response, Debtor and DIP Lender have been working together to secure a buyer for the Property via a broker**.

To wit, the Plan provides for two (2) class of secured creditor; Dakota Note, LLC and Merced, respectively; NO classes of disputed unsecured claims; and NO classes of non-priority unsecured claims. This Plan also provides for the payment of administrative, professional, and priority claims, if any.

Any creditor and equity security holder should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.).**

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1: The claim of Dakota Note, LLC to the extent allowed as a secured claim under §506 of the Code; PAID IN FULL on October 20, 2022.

2.02    Class 2: The claim of Merced DIP Lender, LLC to the extent allowed as a secured claim under §506 of the Code.

2.03    Class 3: Any and All non-priority unsecured claims allowed under §506 of the Code.

## ARTICLE 3

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims: Under §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims: To Date, there are Administrative Expenses for Attorney and CPA, which will be paid after approval by the Court.

3.03    <u>Priority Tax Claims:</u>  As of this Date, there are NO Priority Tax Claims on docket.

3.04    <u>Statutory Fees:</u> All fees <u>required to be paid</u> under 28 U.S.C. §1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the Effective Date.

Until the Effective Date of a confirmed plan, the debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report and shall timely pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees"). Within two business days of the Effective Date, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Following the Effective Date of the confirmed plan, the reorganized debtor and any other authorized parties who have been charged with administering the confirmed plan shall file the UST Form 11-PCR, Post confirmation Report, every calendar quarter and shall timely pay the U.S. Trustee Quarterly Fees until the earlier of: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.///

# ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interest shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claim of Dakota Note LLC | Non-Impaired | The Class 1 Secured Claim of Dakota Note LLC is in the amount of <u>approximately</u> $6,425,293.88; such amount **WAS PAID IN FULL** pursuant to an Order approving DIP Finance on behalf of the Debtor.<br><br>Any non-monetary defaults in existence on the Petition Date, without limitation, shall be deemed waived from and after the Effective Date of the Plan.<br><br>In the event Debtor is required to shut down its operations due to the COVID-19 pandemic (or other disaster) by any governmental authority, all payments and interest under this class shall immediately be suspended for the period of time any federal, state or local business closure order is in effect. Payments shall resume on the first of day of the month immediately following the date in which any business closure order ceases. |

| Class 2 – Secured Claim of Merced DIP Lender, LLC or "Merced" | Non-Impaired | The Class 2 Secured Claim of Merced is in the amount of approximately $24,375,000.<br><br>Such amount shall be paid in full after a…<br><br>13-month period either by…<br>　a. Sale of the property by the Debtor or;<br>　b. FANNIE MAE refinance by the Debtor via Real Estate Finance group Walker & Dunlop;<br>　c. Both methods (a) and (b) having been approved by creditor Merced DIP Lender.<br><br>\*\*On or about December 7, 2022, the initial potential purchaser of the Property dropped itself from the project. In response, Debtor and DIP Lender have been working together to secure a buyer for the Property via a broker\*\*<br><br>The Plan will leave the legal, equitable, and contractual rights of the post-petition lender unaltered.<br><br>In the event Debtor is required to shut down its operations due to the COVID-19 pandemic (or other disaster) by any governmental authority, all payments and interest under this class shall immediately be suspended for the period of time any federal, state or local business closure order is in effect. Payments shall resume on the first day of the month immediately following the date in which any business closure order ceases. |
| Class 3 – General Unsecured Claims | Non - Impaired | Any general unsecured claims, if any, will be paid in full as of the Effective Date of the Plan. |
| Administrative Expense Claims & Professional Fees | Non - Impaired | Any allowable Administrative Expense claims and Professional Fees will be paid in full as of or just after the Effective Date of the Plan; as subject to Court approval. |

# ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   Disputed Claim: A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02   Delay of Distribution on a Disputed Claim:  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03   Settlement of disputed claims: The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

# ARTICLE 6
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01   Means and Implementation of the Plan:  The Debtor shall fund the Plan with this Court's authorization of the Debtor in Possession financing as offered by lender Merced; See – Amended Motion to Approve Debtor-in-Possession Financing.

7.02   **Funding for the Plan**: The Plan will be funded by DIP financing paid pursuant to a DIP order issued by this Court on October 20, 2022; and as set forth in the Amended Motion to Confirm DIP Financing. That Motion contains a summary of the Credit Agreement along with a copy of said agreement; The DIP Order is Attached Thereto within that Motion.

7.03   **Post Confirmation Management**: The Debtor shall be responsible for post-confirmation management.

7.04   **Disbursing Agent**: Debtor shall be the disbursing agent for all distributions under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution of services rendered and expenses incured pursuant to the Plan.

# ARTICLE 7

## GENERAL PROVISIONS

8.01  Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

1. "Administrative Claim" means any Claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with section 503(b) of the Code, including, without limitation:

    (a) The actual, necessary costs and expenses of preserving the Debtor's bankruptcy estate and of operating the Debtor's business, other than Claims which, by their express terms, are not due or payable by the Effective Date;

    (b) The full amount of all Claims for allowance of compensation for legal or other professional services or reimbursement of costs and expenses under section 330 or section 503(b) of the Code, or otherwise allowed by the Bankruptcy Court;

    (c) All fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code, including, but not limited to, court costs; and…

    (d) Expenses incurred by the Debtor in connection with this case, including appraisal fees and attorney fees and expenses incurred in obtaining a confirmed plan of reorganization, in such amount as the Court shall allow; such Claims shall be deemed administrative expenses pursuant to section 503(b) of the Code for the purposes of this Plan.

2. "Allowed Administrative Claim" means an Administrative Claim that is an Allowed Claim.

3. "Allowed Claim" means any Claim in the amount and classification set forth in a proof of claim filed with the Court within the time fixed by the Court, or in the absence of such filing, as set forth in the Debtor's Schedules of Liabilities filed in the Case, unless the Claim was listed in the schedules as disputed, unknown in amount, contingent, or unliquidated, in any event as to which no objection to the allowance thereof has been made within the applicable period, if any, of limitations in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order of the Court providing for allowance.

Multiple proofs of claim of the same Class filed by any party shall be aggregated and shall constitute a single Claim. The allowance of Administrative Claims shall be governed by the applicable provisions of the Code.

4. "Allowed Interest" means the Interest held by a shareholder of record of the Debtor as to which no objection to the allowance thereof has been interposed within the applicable period, if any, of limitations fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order or judgment of the Court.

5. "Allowed Secured Claim" means an Allowed Claim secured by a lien or a perfected security interest in one or more parcels of real property and/or items of personal property in which the estate has an interest, or which is subject to setoff under Section 553 of the Code, in an amount equal to the lesser of the Allowed Claim of that creditor or the value of the Claimant's interest in the property, as determined by the Court pursuant to section 506 of the Code, the interest of such Allowed Secured Claim in the Estate's interest in such property or the extent of the amount subject to setoff, as the case may be, unless the holder of the claim made an election pursuant to section 1111(b) of the Code, in which event the Allowed Secured Claim shall be equal to the Allowed Claim.

6. "Allowed Unsecured Claim" means an Unsecured Claim that is an Allowed Claim.

7. "Case" means the Chapter 11 case of the Debtor, designated as Case No. 2022-10778, pending before the Court.

8. "Claim" means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in section 101(5) of the Code.

9. "Claims Bar Date" means the Date which is the date set by the Court for all creditors to file a Proof of Claim.

10. "Code" and "Bankruptcy Code" mean Title 11 of the United States Code, 11 U.S.C. sections 101–1330, as amended.

11. "Confirmation Order" means that order which provides for confirmation of this Plan at or after hearing pursuant to section 1129 of the Code.

12. "Court" and "Bankruptcy Court" mean the United States Bankruptcy Court for the Eastern District of California (or such other court as may have jurisdiction over this Chapter 11 case) and, with respect to any particular proceeding arising under, in, or relating to this Chapter 11 case, any other court which may have jurisdiction over such proceeding.

13. "Debt" means liability on a Claim.

14. "DIP Finance or Financing or Lender" means…Merced DIP Lender, LLC in its capacity as lender in accordance with and subject to the terms and conditions of the DIP Financing Order and the DIP Loan.

15. "DIP Loan" means that certain loan in the amount of not more than Twenty-Four Million and $375,000 Dollars ($24,375,000) paid by the DIP Lender in favor of the Debtor pursuant to the terms and conditions of the DIP Financing Order.

16. "DIP Loan Claims" mean any and all Claims of the Merced DIP Lender, LLC, represented by, relating to, or arising under or in connection with the DIP Financing Order, whether Administrative Claims or Secured Claims, including DIP Advances and accrued and unpaid interest.

17. "DIP Loan Documents" means the Credit Agreement executed by the DIP Lender and the Debtor in connection with the DIP Loan, in addition to any other security agreements, mortgages, or other documents ancillary to the credit agreement.

18. "Disputed Payment Reserve" means the funds held by any Plan Disbursing Agent for payment of claims that are not allowed claims as of the Effective Date, but which funds will be used to pay such claims after any dispute is resolved by final order or agreement of the parties.

19. "Effective Date" means that date on which the order confirming this Plan becomes final and nonappealable.

20. "Estate" means the bankruptcy estate created upon commencement of the Case, pursuant to section 541(a) of the Code.

21. "Petition Date" means the Date, May 8, 2022, which is the date the Debtor filed its Chapter 11 petition.

22. "Plan" means this Plan of Reorganization proposed by the Debtor, including any amendment or modification made in accordance with the Code.

23. "Plan Disbursing Agent" means the person that may be appointed upon confirmation of the Plan to disburse funds required under the terms of the Plan. If no such person is appointed by the Court, the Debtor shall be the Disbursing Agent.

24. "Real Property" means any or all real property owned by the Debtor.

8.02    Effective Date of Plan.  The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Corporate Governance.  The Debtor is a corporation and pursuant to §1123(a)(6), the Debtor is prohibited from the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

8.08    Retention of Jurisdiction.  Language addressing the extent and the scope of the Bankruptcy Court's jurisdiction after the Effective Date of the Plan.

Dated: May 17, 2023					THE KNIGHT LAW GROUP


						S/s Noel Christopher Knight

					By: _____
						Noel Knight
						Attorney for the Debtor...
						COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC


Dated: May 17, 2023					Respectfully Submitted,


						S/s David C. Sowels

					By: _____
						David C. Sowels, Manager for the Debtor...
						COMPASS POINTE OFF CAMPUS PARTNERSHIP B, LLC

###